461 So.2d 1380 (1984)
Aaron James AUSTIN, Appellant,
v.
STATE of Florida, Appellee.
No. AW-423.
District Court of Appeal of Florida, First District.
December 17, 1984.
*1381 Michael Allen, Public Defender, and Glenna Joyce Reeves, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Barbara Ann Butler, Asst. Atty. Gen., for appellee.
NIMMONS, Judge.
Four days prior to trial, defendant's attorney served upon the prosecuting attorney a notice of intent to claim alibi and listed three witnesses in support thereof. The state filed a pretrial motion to exclude the alibi witnesses due to the late notice. Prior to jury selection, the court heard the state's motion and granted it, thus precluding the defense from calling such witnesses. The record in this case does not support the trial court's exclusion of the witnesses. We must, therefore, reverse.
In excluding the defense witnesses, the trial court expressly relied upon the defendant's failure to comply with the time requirements of Fla.R.Cr.P. 3.200. The court's ruling was not based upon any finding of prejudice to the state. In fact, the court stated, "I am not going to make any determination or finding on prejudice." At the hearing on the state's motion, defense counsel explained he had just been informed of these witnesses only a few days earlier by the defendant and the defendant's brother who had encountered difficulty in running down the witnesses, one of whom resided in Homerville, Georgia.[1] Counsel explained that he then immediately furnished notice to the prosecutor of these witnesses. Defense counsel also advised the court that he would move for a continuance of the trial and waive speedy trial if the prosecutor felt that the state would be prejudiced by proceeding to trial with these new witnesses.
The prosecutor informed the court that the state would not oppose a continuance because of the prosecutor's stated concern over the validity of an order excluding the defense witnesses. Nevertheless, the judge, expressing the view that there had been sufficient time for the defendant to track down his witnesses and give timely notice, and finding that the ends of justice required that the trial commence, ordered the trial to proceed without such defense witnesses being permitted to testify. The judge mentioned, as a factor in his ruling, that the victim, who was the sole eyewitness to the alleged robbery and attempted murder, was 57 years of age. There was no further explanation as to why that was considered a factor by the trial court.
After the court announced its ruling, the prosecutor, apparently concerned over the state of the record at that point, attempted to articulate the prejudice which the state would sustain if such defense witnesses were allowed to testify.[2] She stated that the late notice would preclude the state from an opportunity to take depositions of the witnesses and to attempt to rebut the alibi. That is when the court stated that it was not going to make any determination or finding of prejudice.
In a system in which the search for truth is the principal goal, the severe sanction of witness exclusion for failure to timely comply with the rules of procedure should be a last resort and reserved for extreme or aggravated circumstances, particularly when the excluded testimony relates to critical issues or facts and the testimony is not cumulative. We are not unsympathetic with the plight of the trial judge who must deal with the all-too-frequent eleventh hour revelations of new evidence and witnesses and the inevitable last minute objections and motions in limine based upon procedural rules violations. The trial judge must be accorded considerable *1382 latitude in handling these situations as the exigencies of each case may suggest.
We are unable, however, to affirm the severe sanction of witness exclusion in this case because, even assuming the state would have been prejudiced by the use of the subject witnesses (although, as earlier noted, the trial judge declined to make any finding of prejudice), no effort was made to determine whether reasonable means could have been employed to overcome the prejudice without resorting to the total exclusion of the witnesses. For example, it is not uncommon in these kinds of situations for the court to provide for an appropriate delay or recess to afford the "aggrieved" side the opportunity to depose the new witnesses. It may well be that the state's inquiry of such witnesses would have demonstrated that there was nothing which the state could or would have done differently had it known earlier of such witnesses, thus allaying concern over the late notification. Similarly, it might be that the deposition testimony elicited by the prosecutor from such witness during the recess or delay in proceedings would suggest the need for further minimal investigation in order to avoid or minimize any prejudice of the late disclosure in which case such interests might be adequately accommodated by adjusting the court's trial calendar by, for example, changing the order of trials for the week (or trial period).
Inasmuch as we do not have the benefit of the trial court's determination of prejudice and absent any effort to employ reasonable means short of witness exclusion to overcome any such prejudice, we conclude that the trial court erred in ordering the exclusion of the subject witnesses. See Briseno v. State, 449 So.2d 312 (Fla. 5th DCA 1984); Patterson v. State, 419 So.2d 1120 (Fla. 4th DCA 1982); Slaughter v. State, 330 So.2d 156 (Fla. 4th DCA 1976); Williams v. State, 264 So.2d 106 (Fla. 4th DCA 1972); compare Lail v. State, 314 So.2d 234 (Fla. 4th DCA 1975); and Chester v. State, 276 So.2d 76 (Fla. 2nd DCA 1973).
In light of the necessity of reversal for a new trial, we need address only one of the remaining three issues raised by the appellant. He contends that the trial court erroneously allowed Robert Mincey to be called as a court witness during the state's rebuttal and allowed the state to elicit from Mincey a prior inconsistent statement.
Mincey had earlier been called as a defense witness to refute the testimony of state's witness Ricky Graves who had testified that he was in the company of the defendant the day following the subject convenience store robbery and heard the defendant make certain admissions implicating himself in the crime. Mincey, as a defense witness, testified that he was also in the company of the defendant and Graves and did not hear the defendant make any such admissions.
When the defense rested, the prosecutor then requested that Mincey be called as a court witness on rebuttal by the state. The purpose for calling Mincey was to rebut the defendant's testimony that he was in Homerville, Georgia, when the crime was committed in Jacksonville on May 16, the defendant having testified that he had left Jacksonville to go to Homerville sometime between May 8 and May 10 and was still in Georgia on May 16. The prosecutor explained to the court that, a few days prior to the trial, Mincey had told an assistant state attorney and an investigator that Mincey and the defendant were together at Jacksonville Beach on May 15. The prosecutor further explained that Mincey had recanted that story and would now testify that he did not recall just when he was with the defendant at Jacksonville Beach.
With the jury absent, the court heard a proffer of Mincey's testimony. He testified that he did not recall when he was at Jacksonville Beach with the defendant. However, he admitted having told the assistant state attorney and investigator a few days earlier that he and the defendant were together at Jacksonville Beach on May 15. Over the defendant's objections, the trial judge ruled that Mincey could be called as a court witness. He was and *1383 testified essentially the same as he did on proffer.
The court ruled that Mincey's demeanor while testifying (characterized by the trial judge as "smirking" or "grinning" at the attorneys) and his refusal to testify consistent with his previous statement justified the court's calling Mincey as a court witness and allowing the state to elicit Mincey's prior statement concerning the defendant's whereabouts on May 15. We hold that this was error.
It is true that hostility of a witness towards the parties may suffice as a ground for the trial court's exercise of its discretion in calling a witness as a court witness. See Ehrhardt, Florida Evidence § 615.1 (2d Ed. 1984). However, the sole purpose for Mincey's being called was to elicit his prior unsworn statement for the purpose of proving the truth of such prior statement. Mincey's hostility does not furnish the state grounds for doing what the court permitted.
Under the Florida Evidence Code, there are limited circumstances under which a prior inconsistent statement may be admissible as substantive evidence, i.e. for purposes of establishing the truth of the content of such prior statement. Under Section 90.801(2)(a), Florida Statutes (1983), a prior inconsistent statement may be received as substantive evidence if the person who gave the statement testifies and is subject to cross-examination concerning the statement and such statement had been given under oath in a proceeding in which he could be subjected to the penalty of perjury. Mincey's prior statement does not qualify because it was not made under oath.
Nor would the state have been justified in eliciting Mincey's prior inconsistent statement under Section 90.608, Florida Statutes, which allows a party calling a witness, who proves adverse, to introduce a prior inconsistent statement. Of course, the purpose for which the statement would be elicited would be only for impeachment purposes. But even there, the witness must be shown to be adverse. The fact that a witness may be hostile or unwilling does not mean that he is adverse. See Ehrhardt, Florida Evidence § 608.2, p. 299 (2d Ed. 1984). In order to be regarded as adverse under this section, the witness must give testimony prejudicial to the cause of the party calling him. The fact that he simply fails to give the testimony expected of him and that the testimony was not as beneficial as a prior statement is not sufficient. Ibid. Mincey's testimony that he did not recall whether he and the defendant were together at Jacksonville Beach on May 15 certainly cannot be regarded as prejudicial to the state under the above well-recognized criteria for adverseness. See Johnson v. State, 178 So.2d 724, 728 (Fla. 2nd DCA 1965); Hernandez v. State, 156 Fla. 356, 22 So.2d 781 (1945); and Tipton v. State, 402 So.2d 479 (Fla. 1st DCA 1981) (Smith, R., specially concurring); compare McNeil v. State, 433 So.2d 1294 (Fla. 1st DCA 1983) (testimony of witness exculpating defendant was prejudicial to state and witness was therefore adverse  thus, prior unsworn statement was properly admitted for impeachment purposes under Section 90.608 but inadmissible as substantive evidence under Section 90.801(2)(a)); and Mazzara v. State, 437 So.2d 716 (Fla. 1st DCA 1983) (prior statement not admissible under Section 90.801(2)(a) but admissible under Section 90.608(2)).
Under the circumstances of this case, it was impermissible to use the expedient of calling Mincey as a court witness under Section 90.615 for the purpose of eliciting his prior inconsistent statement either for impeachment purposes or as substantive evidence. To conclude otherwise would permit indirectly that which may not be done directly. See Perry v. State, 356 So.2d 342, 344 (Fla. 1st DCA 1978). Since we reverse for a new trial on other grounds as previously discussed, we do not decide whether the erroneous admission of Mincey's prior statement would, by itself, require reversal.
Reversed and Remanded for new trial.
JOANOS and WIGGINTON, JJ., concur.
NOTES
[1] The defendant was incarcerated, as he had been throughout the pendency of the case.
[2] Contrary to the state's assertion on appeal that the defendant failed to preserve this issue in the lower court, the nature of the testimony of the subject witnesses was adequately established.